```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

LUKE BENNING,                       :
                    Plaintiff,      :
                                    :        Case No. 2:14-cv-71
          v.                        :
                                    :
CORPORATION OF MARLBORO COLLEGE     :
                                    :
                    Defendant.      :
                                    :
```

## OPINION AND ORDER

Plaintiff Luke Benning brings suit against Marlboro College following his suspension in December 2013, alleging breach of contract, breach of the covenant of good faith and fair dealing, and defamation. Compl., ECF No. 1. Benning seeks an injunction ordering Marlboro to reinstate him as a student in good standing and to prevent Marlboro from representing that Benning engaged in wrongdoing that led to his suspension. *Id*., p. 10. Benning also seeks damages in excess of $75,000, with the exact amount to be determined at trial. *Id.*

Before the Court is Marlboro's motion to dismiss and two discovery-related motions.  For the reasons stated below, the Court **denies in part and grants in part** Marlboro's motion to dismiss, ECF No. 7. The Court **denies** Marlboro's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) because the Court has diversity jurisdiction to hear

1

the case under 28 U.S.C. § 1332, but **grants** Marlboro's motion to dismiss Count III for failure to state a claim for defamation under Rule 12(b)(6). The Court **denies** Benning's motion to expedite discovery, ECF No. 17. The Court **denies** Marlboro's motion for a protective order to prevent Benning from deposing certain Marlboro employees, ECF No. 10.

## BACKGROUND[1]

Plaintiff Luke Benning was a student in good standing at Marlboro College during the 2011-2012 academic year. Compl. ¶ 1. At the time, he was dating another student at the College, [hereinafter referred to as "Complainant"]. ¶ 11. In the summer of 2012 he visited Complainant's home in Massachusetts, where she introduced him to her family as her "boyfriend" and, to his discomfort, encouraged him to "perform sexual acts on her." ¶¶ 11-13. The two eventually "engaged in consensual physical intimacy" on August 28, 2012, after they returned to Marlboro. ¶ 16. In the following days, the couple discussed the encounter over Facebook messenger and then "engaged in consensual physical intimacy" again. ¶¶ 17-19. The relationship deteriorated after this second encounter. ¶¶ 20-21.

In the fall of 2012, Benning began spending time with another female student, a friend of the Complainant, initially

---

[1] Benning alleges the following facts in the Complaint. At the pleading stage in response to a motion to dismiss, these facts are assumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

as friends and then as romantic partners. ¶ 22. The Complainant reacted to Benning's new relationship by publishing disparaging comments about him on social media websites and by filing two complaints with Marlboro that alleged that Benning had sexually assaulted her. ¶ 23. At the end of the 2013 spring semester, Marlboro closed the first complaint and deemed the second unworthy of further action. ¶ 24.

In the fall of 2013, Complainant resumed a formal complaint against Benning. ¶ 26. Marlboro officials investigated the woman's allegations and Benning cooperated with the investigation by providing relevant electronic message history. ¶ 27. Marlboro convened a hearing with the Sexual Misconduct Panel ("Panel") to review the findings. ¶ 28. Benning received a letter expelling him from Marlboro on November 1, 2013. The letter stated that the Panel had found that Benning engaged in sexual relations without obtaining effective consent; retaliated, presumably against the Complainant; and had shown a pattern of sexual misconduct. ¶ 30.

Benning appealed the Panel's decision to the Dean's Advisory Committee. ¶ 31. The Committee found three "serious material errors" in the Panel's proceedings, and reduced Benning's punishment to a three-semester suspension. ¶¶ 33-34. Despite these material errors, the Committee nonetheless upheld the Panel's first two findings (lack of consent and

retaliation). ¶ 34. The Committee informed Benning that after three semesters, Marlboro would allow him to apply to re-enroll through the Deans of Faculty and Students, but that re-enrollment would be contingent on his completion of sexual respect training and counseling. ¶ 35.

Following the Committee's decision, Benning filed this lawsuit against Marlboro College on April 15, 2014. In the Complaint, he alleges that he has suffered irreparable reputational harm, severe emotional distress, economic injuries, and loss of educational opportunities, and claims that Marlboro overlooked irrefutable exculpatory evidence in rendering its decision. ¶ 41. As relief, he seeks monetary damages in excess of $75,000 and an injunction requiring Marlboro to reinstate him as a student in good standing and preventing Marlboro from representing to students or the public that he engaged in wrongdoing that resulted in his dismissal. Marlboro has now moved to dismiss the Complaint. According to the parties at the motions hearing, discovery has not moved forward pending the release of this opinion.

## DISCUSSION

There are three motions presently before the Court. First, Benning moves to expedite discovery. Second, Marlboro moves to dismiss the Complaint for lack of subject-matter jurisdiction under 12(b)(1) or, alternatively, to dismiss Count III of the

Complaint for failure to state a claim upon which relief can be granted under 12(b)(6). Third, Marlboro moves for a protective order to shield its employees from being deposed.

    I.   **Motion for Expedited Discovery**

On April 30, 2014, Benning moved to expedite discovery in order to depose witnesses before the end of the academic term on May 13, 2014. The Court denied the motion on May 8, 2014 because Benning failed to show that the witnesses would be unavailable after May 13, 2014. Order, ECF No. 12. On the same day, May 8, 2014, Benning again filed a motion for expedited discovery. Presumably Benning filed the second motion before seeing the Court's order. Regardless, the Motion is now moot because the term in question has passed. The Motion is therefore denied.

    II.   **Motion to Dismiss**

Marlboro moves to dismiss the entire Complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, Marlboro moves to dismiss Count III for failure to state a claim for defamation pursuant to Rule 12(b)(6).

    a. **Motion to Dismiss under Rule 12(b)(1)**

This case is in federal court on diversity grounds. Under 28 U.S.C. § 1332, federal courts have jurisdiction where the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Here, there is no

dispute that there is complete diversity between the parties. Marlboro argues that the Court lacks jurisdiction because the amount in controversy does not meet the required statutory minimum, $75,000. Def.'s Mot. Dismiss, 1.

In determining the amount in controversy, the Court includes all claims brought against a single defendant. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 (2d Cir. 2005).[2] The Court must dismiss a suit if it is clear to a legal certainty that the plaintiff will not recover more than the statutory minimum. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Any uncertainty should be "resolved in favor of the plaintiff's pleadings." *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994).

Benning seeks damages for breach of contract, breach of the covenant of good faith and fair dealing, and defamation. When all of these claims are considered, Benning properly alleges that damages will exceed $75,000.

Benning first seeks contract damages for Marlboro's "fail[ure] to comply with its policies governing student

---

[2] Regardless of its outcome, Defendant's 12(b)(6) motion to dismiss Count III does not affect the amount in controversy determination because the amount in controversy depends on the amount claimed in good faith in the complaint. *See Wolde-Meskel v. Vocational Instruction Project Cmty Serv's, Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) ("a valid defense offered by the defendant or summary judgment on one of the complaints doesn't lead to dismissal of the whole case because it falls short of the amount in controversy"); *see also Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353 (1961) ("amount in controversy is [to be determined] from the complaint itself").

discipline in the event of sexual misconduct." Compl. ¶¶ 47, 52. The "relationship between a student and a college is contractual in nature." *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 708 (D.Vt. 2012) *aff'd*, 2014 WL 2808091 (2d Cir. 2014); *see also Fellheimer v. Middlebury College*, 869 F.Supp. 238, 243 (D.Vt. 1994) (finding College "contractually bound to provide students with the procedural safeguards it has promised"). Contract damages restore the plaintiff to the "economic position he would have been in had the defendant fulfilled his contract." *Adams v. Lindblad Travel*, 730 F.2d 89, 92 (2d Cir. 1984). Contract damages measure lost value due to defendant's breach, plus incidental or consequential losses caused by the breach, less any costs the plaintiff avoided by not performing. *Rest. (Second) of Contracts § 347*.

Damages for Marlboro's alleged breach of contract should therefore measure the cost to Benning of Marlboro's disciplinary decision.[3] Benning's costs include lost earnings as a result of the delay in graduation, expenses incurred during the

---

[3] Benning claims that the price of Marlboro's tuition reflects the value of the education he expected to receive, and thus the cost of Marlboro's breach. Pl.'s Resp. to Def.'s Mot. Dismiss ("Pl. Resp."), ECF No. 15, ¶ 2. Marlboro responds that damages will not exceed $75,000 because Benning has not yet paid tuition for the semesters of his suspension.
   The Court finds neither argument persuasive. If Benning does not return to Marlboro, he loses $72,585 in educational value, but he also avoids the cost of tuition by not performing. Because Benning has not yet paid tuition, damages for a breach of contract should not depend on the cost of tuition, but rather on the cost of delaying graduation.

suspension, and the reputational and emotional cost of the suspension. *See Rest. (Second) of Contracts § 344(1)(a)* (damages "put [injured party] in as good a position as he would have been in had the contract been performed"). Benning will likely introduce an expert witness to testify that Benning would have a greater earning potential with a timely college degree; over time, damages for delayed graduation alone may amount to well over $75,000.

In addition to contract damages, Benning also seeks damages for defamation. Compl. ¶ 59. Damages for defamation in diversity actions depend on the laws of the forum state. *Imbrogno v. Chamberlin*, 89 F.3d 87, 89 (2d Cir. 1996). In Vermont, damages for defamation have ranged from $40,000, *Lent v. Huntoon*, 470 A.2d 1162 (Vt. 1983) (employer wrote defamatory letter about employee on company letterhead), to $350,000, *Cooper v. Myer*, 944 A.2d 915, 919 (Vt. 2007) (employee told third parties that general manager was a thief and embezzler). Because the charges of sexual assault underlying Benning's defamation claim are very serious, it is plausible that he could recover more than $75,000 in damages on this claim.

When both the contract claim and defamation claim are considered, it is not clear "to a legal certainty" that he will not recover more than the statutory minimum. *St. Paul Mercury Indem. Co.* 303 U.S. at 289. Therefore, the Court accepts

8

Benning's good faith claim that compensatory and punitive damages will exceed $75,000, particularly given that any uncertainty must be resolved in favor of the complaint. Because there is complete diversity in this case and the amount in controversy exceeds $75,000, the Court has subject matter jurisdiction under 28 U.S.C. § 1332. The Court therefore denies the 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.

### b. Motion to Dismiss Count III under Rule 12(b)(6)

Marlboro also moves under Rule 12(b)(6) to dismiss Count III for failure to state a claim for defamation. In diversity suits, the Court applies federal law to rules concerning the "practice and procedure of district courts," but applies the Vermont law to substantive issues. *Hanna v. Plumer*, 380 U.S. 460, 464 (1965); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, the Court evaluates the Complaint under the pleading standard set forth in the Federal Rules of Civil Procedure and considers the elements of defamation according to Vermont state law.

### i. 12(b)(6) Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), the court must dismiss a claim that fails to include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting

9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court accepts all factual allegations as true. *Twombly*, 550 U.S. at 555.

Defamation claims are evaluated under Rule 8(a), which requires that the plaintiff make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 671-72 (S.D.N.Y. 2007) (defamation claims are not evaluated under heightened pleading standard of Rule 9(b)). Rule 8 "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Twombly*, 550 U.S. at 556. The complaint "need not specifically plead the alleged defamatory words" but must provide the opposing party with "sufficient notice of the communications complained of to enable him to defend himself." *East Amherst Plumbing, Inc. v. Thompson Slip Copy*, 2013 WL 5442263 *9 (W.D.N.Y. Sept. 27, 2013) (internal citations omitted) (dismissing complaint that failed to identify content, publication, and lack of privilege).

### ii. Defamation Claim

In Vermont, the required elements of a defamation claim are: "(1) a false and defamatory statement concerning another, (2) some negligence, or greater fault, in publishing the statement, (3) publication to a third person, (4) lack of privilege in the publication, and (5) some actual harm so as to

warrant compensatory damages." *Crump*, 576 A.2d at 446 (Vt. 1990) (internal citations omitted). The principal allegation underlying Benning's defamation claim is that he "experienced hostile encounters" with students and staff whose only sources of information were Marlboro employees with "first-hand knowledge of the proceedings." ¶ 56. From this Benning infers that Marlboro employees must have made false and defamatory statements to students and staff. ¶ 41. However, Benning fails to allege any specific facts that would identify a particular defamatory statement, its speaker, its audience, or when it was said. Because the Complaint does not allege a particular statement, it necessarily fails to allege that a statement was negligent, published, or unprivileged. As a result, Count III cannot withstand Marlboro's 12(b)(6) Motion to Dismiss.

    A statement is defamatory if it lowers the subject in "the estimation of the community." *Marcoux-Norton v. Kmart Corp.*, 907 F.Supp. 766, 778 (D.Vt. 1993). Benning's Complaint alleges that Marlboro employees made statements "that [Benning] did sexually assault a female student," and Benning maintains that he did not sexually assault a female student. Compl., ¶ 55. Accepting that anyone made a defamatory statement from these allegations would be mere speculation, since Benning provides no details to establish the context of the statement.

11

Benning also fails to indicate how any alleged statement, if made, was negligent. A person acts negligently in publishing a defamatory statement by failing perform a "check or lack of check as to [the statement's] accuracy." *Marcoux-Norton*, 907 F.Supp. at 779 (quoting Restatement (Second) of Torts § 580B comment h). Benning alleges that Marlboro employees spoke "with reckless disregard for [the statements'] truth." Compl. ¶ 57. As Benning fails to identify any specific statement, his allegation of recklessness is conclusory.

The Complaint also fails to allege publication. Publication requires speaking or writing to a third party. *See Knelman*, 898 F.Supp.2d at 723.[4] Benning's Complaint infers that members of the Panel or Committee must have made statements to third parties, but fails to identify those people. *Cf. Pasqualini*, 498 F.Supp.2d at 664 (Plaintiff properly alleged defamation by identifying that defendant "circulated an e-mail regarding plaintiff's termination" that described "plaintiff as disloyal and incompetent" and was "distributed to numerous individuals," including a named prospective employer.).

---

[4] Although Benning's Complaint claims that Marlboro's decision will "necessarily be republished" if Benning applies to another college, ¶ 60, self-publication does not satisfy publication. *See Knelman*, 898 F. Supp. 2d 697, 724 (D.Vt. 2012)("the requirement of publication is generally not met when a defendant publishes a statement directly to a plaintiff, even if the plaintiff then publishes the statement to a third party."); *see also De Leon v. St. Joseph Hosp., Inc.* 871 F.2d 1229, 1237 (4th Cir. 1989) ("the theory of self-publication has not gained widespread acceptance" in defamation cases.).

Finally, because Benning fails to identify any specific defamatory statement, it is impossible to determine whether members of the community were privileged to know the content of the unidentified statement. *See Knelman*, 898 F. Supp. 2d at 725 (quoting Restatement (Second) of Torts § 596)(privilege established if speaker "reasonably . . . believe[d] that there [was] information that another sharing [a] common interest [was] entitled to know.").

Because of these deficiencies, the Complaint does not allege sufficient facts to provide Marlboro notice to prepare a defense on the defamation claim. Count III thus fails to meet the pleading requirements of Rule 8(a) and is dismissed without prejudice. If Benning uncovers evidence of defamation during discovery, he may move to amend the Complaint to re-allege defamation.

### III. Motion for a Protective Order

Marlboro also moves for a protective order to prevent Benning from deposing Marlboro employees under the deliberative process privilege. Def.'s Mot. Protective Order ¶ 5. The deliberative process privilege is an exception to the "fundamental principle that 'the public . . . has a right to every man's evidence." *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)). The privilege exempts from the Freedom of Information

13

Act "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C.A. § 552(b)(5). The exemption applies to government-produced, "predecisional," "deliberative" content. *Hopkins v. H.U.D.*, 929 F.2d 81, 84 (2d Cir. 1991); *see also N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (covering materials that are "part of a process by which governmental decisions and policies are formulated.").

Marlboro argues that the deliberative process privilege should shield members of the Panel and Committee from deposition because the Panel and Committee are analogous to government entities. Def.'s Mot. Protective Order, ¶ 5. Marlboro further suggests that deposing Panel and Committee members would chill the "type of robust debate necessary" to make fair decisions. *Id.* at ¶ 6

However, the deliberative process privilege does not apply to Marlboro College because the College is not a government entity. *See New York City Managerial Employee Ass'n v. Dinkins*, 807 F. Supp. 955, 957 (S.D.N.Y. 1992) ("The purpose of the privilege is to ensure that the quality of government decisions is not compromised by subjecting all government discussion to public scrutiny"); *see also Hopkins*, 929 F.2d at 84 (deliberative process privilege sometimes known as "executive privilege."). In fact, the Supreme Court refused to apply the

14

deliberative process privilege to another private college, the University of Pennsylvania, when the University moved to shield peer review files from the Equal Employment Opportunity Commission. *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182 (1990). The Court warned that extending the privilege to private entities would "embark the judiciary on a long and difficult journey to . . . an uncertain destination," *id.* at 588, and wrote, "indeed, if there is a 'smoking gun' to be found that demonstrates discrimination in tenure decisions, it is likely to be tucked away in peer review files," *id.* at 193. Although Marlboro's motion highlights similarities between the Panel, the Committee, and the government, the motion cites only cases where the privilege applied to executive agencies. *See, e.g.*, *Hopkins*, 929 F.2d 81 (applying privilege to Department of Housing and Urban Development); *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134 (D.D.C. 2002) (Environmental Protection Agency).

Applying the deliberative process privilege to a faculty deliberation at Marlboro College would significantly expand the privilege's scope. Moreover, if there is a "smoking gun," a reason that the Panel or Committee overlooked exculpatory evidence, Benning would discover that information by deposing Panel and Committee members. Finally, the Court is not concerned that allowing discovery will chill the "robust debate" necessary to make thoughtful disciplinary decisions that follow the

15

procedures outlined in the College's student handbook. Therefore, the Court denies the Motion for a Protective Order.

## CONCLUSION

The Court **denies** the Motion for Expedited Discovery as moot. The Court also **denies** the 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction because the plaintiff has claimed damages in excess of $75,000, but **grants** the 12(b)(6) Motion to Dismiss Count III for Failure to State a claim because the Complaint failed to allege defamation with sufficient facts. Count III is therefore dismissed without prejudice. Finally, the Court **denies** the Motion for a Protective Order because Marlboro is not a government entity.

DATED at Burlington, in the District of Vermont, this 5th day of August, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge